# EXHIBIT C

CONFIDENTIAL



# NONSOLICITATION AGREEMENT

This Nonsolicitation Agreement ("Agreement") is entered into as of 31 January 2023, by and between Jump Operations, LLC (the "Company" or "Jump"), and Liam Heeger ("me" or "I"). The Company and I are each a "Party" and collectively the "Parties." Any capitalized terms used and not defined in this Agreement shall have the respective meanings given to them in the Confidential and/or Proprietary Information Agreement.

Any employment relationship between the Company and me, whether commenced prior to, upon or after the date of this Agreement, shall be referred to herein as the "Relationship." In consideration of (i) the covenants and promises contained herein, (ii) my employment by the Company, and (iii) the compensation and benefits received or to be received by me from the Company, the sufficiency of which is acknowledged, the Parties, intending to be legally bound, agree as follows:

1. NONSOLICITATION. During the Relationship, and for a period of twenty-four (24) months immediately following the termination of the Relationship for any reason, whether with or without cause (the "Nonsolicitation Period"), I shall not directly or indirectly:

    a. hire or employ any Group Company Employee or any Group Company Partner Employee;

    b. solicit, induce, recruit or encourage any Group Company Employee, Group Company Partner Employee, Group Company or Group Company Partner consultant, trading counterparty, or supplier to:

        i. terminate or reduce his, her, their, or its relationship with any Group Company or Group Company Partner, as applicable; or

        ii. commence any relationship that would be incompatible with such Group Company Employee, Group Company Partner Employee, or Group Company or Group Company Partner consultant, trading counterparty, or supplier maintaining his, her, their, or its relationship with any Group Company or Group Company Partner, as applicable; or

    c. interfere with the performance of any duties of any Group Company Employee, Group Company Partner Employee, Group Company consultant, trading counterparty, or supplier, or Group Company Partner consultant, trading counterparty, or supplier.

"Group Company Employee" for purposes of this Agreement means any person that (i) is an employee, member, or shareholder of any Group Company at the time of contact, Solicitation, inducement, or recruitment, or (ii) was an employee, member, or shareholder of any Group Company at any time within the twelve (12) month period immediately preceding such contact, Solicitation, recruitment, or inducement.

"Group Company Partner" for purposes of this Agreement means any joint venture or partnership of any Group Company or Group Companies in which the Group Company possesses (or the Group Companies collectively possess) at least 30 percent of the direct or indirect ownership or control of the equity or voting interests.

"Group Company Partner Employee" for purposes of this Agreement means any person that (i) is either (a) an employee, member, or shareholder of any Group Company Partner at the time of contact, Solicitation, inducement, or recruitment, or (b) was an employee, member, or shareholder of the any Group Company Partner at any time within the twelve (12) month period immediately preceding such contact, Solicitation, recruitment, or inducement; and (ii) provided material services to any Group Company while employed by such Group Company Partner.

**Jump Operations, LLC**
600 West Chicago Avenue · Suite 600 · Chicago, Illinois 60654

**CONFIDENTIAL**



"Solicit" and "Solicitation" for purposes of this Agreement means any direct or indirect communication of any kind whatsoever, regardless of by whom initiated, inviting, advising, encouraging, or requesting any person or entity, in any manner, to reduce or terminate their employment or involvement with any Group Company or commence or consider employment with, ownership of, partnership in, or consulting with any other entity or person. I understand that Solicitation of any Group Company Employee, Group Company Partner Employee, or Group Company or Group Company Partner consultant, trading counterparty, or supplier includes directly or indirectly informing any other person that the Group Company Employee, Group Company Partner Employee, or Group Company or Group Company Partner consultant, trading counterparty, or supplier in question has particular skills, abilities, qualities, merit, or fit where I know or reasonably should know that such information will be used – or I intend such information to be used –in connection with the solicitation, inducement, recruitment or encouragement of such Group Company Employee, Group Company Partner Employee, or Group Company or Group Company Partner consultant, trading counterparty, or supplier to terminate or reduce his, her, their, or its relationship with the Company or commence any relationship that would be incompatible with such Group Company Employee, Group Company Partner Employee, or Group Company or Group Company Partner consultant, trading counterparty, or supplier maintaining his, her, their, or its relationship with the Company.

2. REASONABLE AND NECESSARY. I agree that the scope and duration of the restrictions and limitations described in this Agreement are reasonable and necessary to protect the legitimate business interests of the Group Companies. I further acknowledge that these restrictions and limitations apply regardless of the reason for the termination of the Relationship.

3. CONSIDERATION. In addition to the financial benefits I receive from being employed by the Company, which are set forth in part in my Offer Letter, and in addition to the professional benefits I receive from being employed by the Company (including training and exposure to highly confidential and proprietary information and to highly skilled and trained co-workers), all of which I hereby acknowledge, if I am employed by the Company for fewer than two years after first signing either this Agreement or another agreement not to solicit Company employees, then I shall receive the lesser of (x) one-twelfth (1/12th) of my most recent annualized base salary and (y) ten thousand dollars ($10,000) as additional consideration for my entering into and complying with this Agreement (the "Additional Consideration"). Such Additional Consideration shall be paid to me within sixty days of the termination of my employment.

4. MODIFICATION BY TRIBUNAL. If a court or arbitration panel determines that the time and/or geographic restrictions imposed upon me as set forth in Section 1 of this Agreement are unenforceable in part, such court or arbitration panel may modify this Agreement so as to impose upon me such restrictions of time and geographic scope as the court or arbitration panel shall find reasonable and proper under the circumstances. All remaining provisions of this Agreement not modified by the court or arbitration panel shall remain in full force and effect.

5. ILLINOIS FREEDOM TO WORK ACT. Notwithstanding anything to the contrary in this Agreement, if as of the Effective Date Employee's actual or expected annualized rate of earnings does not exceed the applicable threshold amount mandated by the Illinois Freedom to Work Act, 820 ILCS 90/10 (the "Minimum Earnings Threshold"), the obligations contained in Section 1 of this Agreement (the "Nonsolicit Covenants") shall be inapplicable to Employee. The Nonsolicit Covenants shall only apply to and bind Employee from and after the date on which Employee's actual or expected annualized rate of earnings does exceed the applicable Minimum Earnings Threshold.

6. INCORPORATION OF TERMS SET FORTH IN THE CONFIDENTIAL AND/OR PROPRIETARY INFORMATION AGREEMENT. In connection with my employment by the Company I have signed or will sign an agreement titled **Confidential and/or Proprietary Information Agreement**. The following provisions set forth in the **Confidential and/or Proprietary Information Agreement** are incorporated herein by reference and form a part of this Agreement:

    a. Section 9 pertaining to "Notification of Obligations";

**Jump Operations, LLC**
600 West Chicago Avenue · Suite 600 · Chicago, Illinois 60654

CONFIDENTIAL



    b. <u>Section 10</u> pertaining to "Dispute Resolution, Law and Jurisdiction" (including, without limitation, the choice of applicable law, the agreement to arbitrate disputes between us except where it is not lawful to require arbitration, the waiver of trial by jury, and the potential for a Group Company to obtain emergency relief in court); and

    c. <u>Section 12</u> pertaining to "General Provisions."

7. VOLUNTARY ACCEPTANCE. By signing this Agreement, I acknowledge that:

    a. This Agreement has been written in understandable English;

    b. I have carefully read and fully understand all provisions of this Agreement;

    c. I knowingly and voluntarily agree to all of the terms set forth in this Agreement;

    d. I knowingly and voluntarily agree to be legally bound by this Agreement;

    e. I have signed this Agreement of my own free will and without duress or constraint and without representations not expressly set forth herein and not relying on any asserted duty or obligation by the Company or any other person to disclose information in connection herewith;

    f. I understand that I am entitled to 14 days within which to review this Agreement and decide whether to enter into it; and

    g. I understand that the Company recommends that I seek the advice of independent legal counsel in connection with this Agreement and I confirm that I have had the opportunity to consult with independent legal counsel before signing this Agreement.

AGREED TO AND ACCEPTED BY:

Jump Operations, LLC

By: *Emily Whalen*

Emily Whalen

Date: 25 January 2023

Liam Heeger

By: *Liam Heeger*
Signature

Date:
31 January 2023

**Jump Operations, LLC**
600 West Chicago Avenue · Suite 600 · Chicago, Illinois 60654