UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

JUMP OPERATIONS, LLC,

                Plaintiff,

     v.

LIAM HEEGER,

                Defendant.

Case No. 1:25-cv-00703

## **DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................ 1

ARGUMENT ................................................................................................................... 5

    JUMP'S MOTION FOR EXPEDITED DISCOVERY SHOULD BE DENIED. ............. 5

        A.    Expedited Discovery Is Unwarranted Because Jump's Motion for
             Injunctive Relief Is Likely To Be Dismissed As A Matter Of Law. ......... 5

        B.    Jump Seeks Overbroad and Intrusive Discovery. ..................................... 7

        C.    Jump Has Not Demonstrated Any Urgent Need for Discovery. ................ 7

        D.    Defendant Will Be Unduly Burdened By Discovery In This Forum ......... 9

CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Campaignzero, Inc. v. Staywoke Inc.*,
  No. 20-cv-06765, 2020 WL 7123066 (N.D. Ill. Dec. 4, 2020)................................................8

*CGB Diversified Servs., Inc. v. Morrison*,
  No. 20-cv-3043, 2020 WL 4547885 (C.D. Ill. Apr. 2, 2020)..................................................8

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
  No. 21-c-135, 2021 WL 5862494 (N.D. Ill. May 6, 2021)......................................................5

*Goplin v. WeConnect, Inc.*,
  893 F.3d 488 (7th Cir. 2018) ..................................................................................................3

*Hard Drive Prods., Inc. v. Doe*,
  283 F.R.D. 409 (N.D. Ill. 2012)..............................................................................................5

*Ibarra v. City of Chicago*,
  816 F. Supp. 2d 541 (N.D. Ill. 2011) ......................................................................................5

*Landwehr v. F.D.I.C.*,
  282 F.R.D. 1 (D.D.C. 2010)....................................................................................................5

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*,
  194 F.R.D. 618 (N.D. Ill. 2000)..........................................................................................5, 9

*OrthoPediatrics Corp. v. Wishbone Med., Inc.*,
  No. 20-CV-929, 2020 WL 9671301 (N.D. Ind. Dec. 15, 2020) ....................................6, 8, 10

*Prudential Ins. Co. of Am. v. LaFontain*,
  No. 24-cv-940, 2024 WL 3802757 (E.D. Wis. Aug. 9, 2024).........................................5, 6, 9

*Restoration Hardware, Inc. v. Haynes Furniture Co.*,
  No. 16-cv-10665, 2017 WL 3597518 (N.D. Ill. Mar. 13, 2017) .............................................6

*Shutterfly, Inc. v. ForeverArts, Inc.*,
  No. 12-cr-3671, 2012 WL 2911887 (N.D. Cal. July 13, 2012) ...............................................9

*WCG Clinical, Inc. v. Sitero, LLC*,
  No. 24-01080, 2025 WL 107662 (S.D. Ind. Jan. 15, 2025)......................................................7

**Statutes**

820 ILCS 90/1-90/10 ......................................................................................................................2

Plaintiff Jump Operations, LLC ("Jump") has sought expedited discovery in connection with its previously filed motion seeking injunctive relief. The Court previously denied Jump's request for this discovery. (ECF No. 16.) Defendant Liam Heeger requests that the Court do so again now. Contemporaneously with initiating this action, Jump initiated an arbitration proceeding wherein Jump and Mr. Heeger will be adjudicating the same claims that have been presented to this Court. It is in that proceeding where these discovery requests should be handled as Jump has failed to establish as a matter of law a legitimate basis for this Court to intervene with equitable remedies pending resolution in arbitration. Mr. Heeger intends to address this shortcoming in a motion to dismiss the Complaint and, if necessary, and at the appropriate time, in an opposition to Jump's motion seeking injunctive relief.

Jump should not be allowed to bypass the arbitration discovery process through its unsupported and legally flawed filings in this Court. Given the lack of any evidence supporting its accusations in the complaint (ECF No. 9, the "Complaint"), the preliminary injunction motion (ECF No. 11) and associated expedited discovery motion (ECF No. 10) can only be understood as intended to find evidence supporting the necessity of injunctive relief rather than to put injunctive relief in place pending arbitration. This is not an appropriate use of this Court's judicial resources and goes well beyond preserving the status quo. Jump's filings with this Court seek to create parallel litigation tracks, duplicative efforts, and mounting attorneys' fees. These discovery requests should be addressed in arbitration and in accordance with the applicable rules set forth in Jump's employment agreements with Mr. Heeger.

## FACTUAL BACKGROUND

Over two months after Defendant Liam Heeger resigned from his former employment with Jump to begin work on building the foundational structure (also known as the "layer 1") for a new blockchain network—and over a month after Heeger made clear to Jump what he was working on—Jump now claims it needs "expedited discovery." (Complaint ¶¶ 2-3; ECF No. 10 ¶ 5.) There is no urgent need for this discovery, no forensics showing any theft of confidential information or intellectual property belonging to Jump, and no legitimate business interest supporting the

injunctive relief sought in the pending preliminary injunction motion filed by Jump. In fact, the Complaint supporting that motion is itself so threadbare of any facts that Mr. Heeger intends to make a motion to dismiss it in its entirety. Simply put, there is no basis for this matter to be before this Court.

Mr. Heeger will participate fully in discovery, under standard time frames, in the ordinary course in the pending arbitration proceeding that has already been initiated by Jump. (*See* Complaint ¶¶ 8-9.) Mr. Heeger opposes the request for expedited discovery as there is no basis identified by Jump for it to be seeking discovery of any sort in a proceeding before this Court given the requirement that the parties resolve any dispute in arbitration. (*Id.*; Complaint, Ex. D § 10(c) (the "Arbitration Agreement").) No exception to that requirement exists here. Jump has not identified a legitimate business interest—as is required under the Illinois Freedom to Work Act[1]— for it to seek the injunctive relief it is asking that this Court grant against Mr. Heeger. It would be entirely inappropriate for this discovery motion to be granted and Jump be given expedited discovery it is purportedly seeking in aid of that meritless request.

The facts are simple here. There is no competition between what Mr. Heeger is building and what he was working on for Jump. Currently, Mr. Heeger is building a *new* blockchain network.[2] At Jump, Mr. Heeger built discrete tools to enable specific functionalities for *existing* blockchain networks operated by other entities—not Jump. There is no dispute that he did not work on building aspects of foundational blockchain infrastructure (i.e., the layer 1). Instead, at Jump, Mr. Heeger worked on building a new, specialized validator tool for the Solana blockchain ecosystem—an established blockchain network—based on a contract procured by Jump with

---

[1] 820 ILCS 90/1-90/10.
[2] A "blockchain" or "blockchain network" is a technology product that acts as a digital, decentralized, public ledger that maintains records of digital asset ownership and transactions. (Complaint ¶ 18.) Mr. Heeger is building a layer 1 blockchain. A layer 1 blockchain is the foundational structure of a blockchain network, like Solana, Bitcoin, or Ethereum. It's called "layer 1" because it provides the core rules, infrastructure, and security for the entire network, upon which other applications and technologies can be built. Solana Foundation, Jump's customer, is the creator of the Solana blockchain network. (Complaint ¶¶ 21-22.)

Solana Foundation (an affiliate of Solana Labs).[3] (Complaint ¶¶ 22, 24-25). This is Jump's business in the crypto industry—as is made clear on its website[4] and in its filings: "Jump Crypto will propose significant upgrades to Solana's open-source core software along with building a second and new validator client, separate from the one originally built by Solana Labs."[5] Jump exclusively builds tools to enhance existing blockchain networks.[6]

By contrast, Mr. Heeger left Jump to build his own layer 1 blockchain network and is not seeking to sell any services or tools to existing blockchain network providers. (Complaint ¶ 5.) This distinct separation in product offerings and market positioning illustrates that both companies operate in different segments of the crypto industry, making them complementary rather than competitive. It is not alleged by Jump that Mr. Heeger is developing tools, enhancements, or other products or services for any other blockchain network developers, including Solana Foundation. In no scenario will Mr. Heeger sell or market any product or service Jump develops or offers. Indeed, Jump openly admits that the blockchain network it seeks to protect from competition is not even Jump's intellectual property—it belongs to its customer, Solana Foundation. (Complaint ¶ 22.) This is not a legitimate business interest for Jump to seek an injunction to block Mr. Heeger from building his own blockchain network.[7]

Given that the harm Jump claims to be concerned with is the impact that Mr. Heeger's efforts will have on Solana's ongoing viability as a blockchain network, the harm alleged here is quantifiable and recoverable through money damages. The value of Jump's contract with Solana Foundation for its services is an established amount. (Complaint ¶ 23.) There can be no irreparable harm to Jump based on competition with Solana Foundation.

---

[3] A blockchain is comprised of many technological parts, including a mechanism to confirm transactions are legitimate and accurate (a "validator"). (Complaint ¶ 18.) All of these parts cumulatively comprise the blockchain in the same way that wheels, tires, an axel, an engine, and a steering wheel all comprise an automobile.

[4] The Court can take judicial notice of public websites of the parties, which contain information regarding the relevant software and businesses. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018).

[5] Kevin J. Bowers, *Jump Crypto Sets Out to Build New Validator Client for the Solana Blockchain to Increase the Throughput and Reliability of the Network* (Aug. 16, 2022), https://jumpcrypto.com/writing/jump-crypto-sets-out-to-build-new-validator-client-for-the-solana-blockchain-to-increase-the-throughput-and-reliability-of-the-network/.

[6] Using the automobile analogy in FN.3, Jump is in the business of making tires that it offers to certain car makers to make their cars faster. It is not in the business of building, designing, or selling "automobiles."

[7] Neither Solana Foundation nor Solana Labs have initiated legal proceedings against Mr. Heeger.

Separately, Jump carries the burden of supporting its claim that its confidential information, trade secrets, or intellectual property are at risk of irreparable harm based on Mr. Heeger's new project working on building a layer 1 blockchain. While Jump has all of the facts and evidence at its disposal to substantiate its claims that its confidential information, trade secrets, or intellectual property are allegedly at risk of irreparable harm, it has failed to identify with any particularity (beyond categories and broad generalities) what Jump is concerned that Mr. Heeger *might* use or disclose in his new venture. In fact, Jump's filings entirely gloss over the fact that *nearly all of the software code for Jump's validator tool, which Mr. Heeger worked on at Jump, is open source and available to anyone to use however they want*.[8] The same is true for the code related to the Solana blockchain.[9]

Jump's request for expedited discovery cannot be used as an end run to bridge the gap between speculation and plausibility. In fact, beyond speculation and unfounded accusations, Jump has not articulated facts supporting a plausible belief that Mr. Heeger is engaged in any activity that would support the equitable relief sought in the preliminary injunction motion.

Mr. Heeger has been transparent with Jump about his intention to build a new blockchain network. (Complaint ¶¶ 63, 65.) He has repeatedly provided assurances that he has no intention of using or disclosing any of Jump's confidential information or trade secrets as part of that work. (*Id.* ¶¶ 63, 67.) Based on the lack of competition and the absence of any evidence of exfiltration or trade secret or confidential information being at risk, there is no compelling reason presented to doubt Mr. Heeger's assurances. Mr. Heeger respectfully requests that the Court deny Jump's

---

[8] "Firedancer is open source and being developed on GitHub. All contributions are welcome. Jump is currently the primary contributor as the project is in the initial development phase, but Firedancer is a decentralized, community validator and project stewardship will be transitioned to the community as the project matures." FIREDANCER, https://docs.firedancer.io/guide/firedancer.html (last updated Aug. 26, 2024, 12:01 PM). The validator tool that Mr. Heeger was working on at Jump is referred to by Jump as Project Firedancer. (Complaint ¶¶ 22, 25).

[9] This free use ethos is reflected in statements from Solana Foundation, which describes the Solana blockchain as follows: "Anyone in the world can view, download, modify the validator source code, and run the software to participate in the operation and security of the network. There is no single entity that controls how the network runs, or what kinds of applications or services can be built or used on top of the network. In this way, Solana is 'permissionless', meaning that nobody needs anyone's permission to participate, develop, extend or use the network." Solana Foundation, *Validator Health Report: August 2022* (Aug. 9, 2022), https://solana.com/news/validator-health-report-august-2022.

request for expedited discovery and allow the parties to adjudicate this matter in the normal course, whether in arbitration or before this Court (if merited), once the legal issues raised in Mr. Heeger's forthcoming motion to dismiss have been addressed.

## ARGUMENT

### JUMP'S MOTION FOR EXPEDITED DISCOVERY SHOULD BE DENIED.

A party seeking expedited discovery bears the burden to make a *prima facie* showing of the need for expedited discovery. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000). "Expedited discovery is unusual, and the party seeking expedited discovery has the burden of establishing good cause for such a need." *In re Clearview AI, Inc., Consumer Priv. Litig.*, No. 21-c-135, 2021 WL 5862494, at *2 (N.D. Ill. May 6, 2021) (citing *Hard Drive Prods., Inc. v. Doe*, 283 F.R.D. 409, 410 (N.D. Ill. 2012)). In evaluating a motion for expedited discovery, courts look at "the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Prudential Ins. Co. of Am. v. LaFontain*, No. 24-cv-940, 2024 WL 3802757, at *4 (E.D. Wis. Aug. 9, 2024) (quoting *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011)). In applying the "reasonableness" standard, courts consider "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Ibarra*, 816 F. Supp. 2d at 554 (quoting *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 3-4 (D.D.C. 2010)). Jump has not met this burden, and the request is not reasonable in the context of this case. Jump's motion must be denied.

### A. Expedited Discovery Is Unwarranted Because Jump's Motion for Injunctive Relief Is Likely To Be Dismissed As A Matter Of Law.

While Jump has filed a motion for injunctive relief, the motion has no credible basis for the relief it seeks. Filing a motion seeking a preliminary injunction that has no likelihood of success should not open the doors to discovery prematurely. Mr. Heeger anticipates submitting a motion to dismiss, which will seek dismissal of the Complaint in its entirety based on there being no basis

for seeking injunctive relief. This dispute should be resolved through arbitration as the parties agreed. (Complaint ¶¶ 8-9; Arbitration Agreement). Engaging in expedited discovery before Mr. Heeger's motion to dismiss is decided would place an undue burden on Mr. Heeger, forcing him to incur significant costs and expend resources on unnecessary discovery in this forum. Jump should not be granted expedited discovery on claims likely to fail as a matter of law. *Prudential*, 2024 WL 3802757, at *4 (denying expedited discovery where former employer "produced little reliable evidence" that defendants misappropriated former employer's confidential information or solicited clients in breach of restrictive covenants); *OrthoPediatrics Corp. v. Wishbone Med., Inc.*, No. 20-CV-929, 2020 WL 9671301, at *2 (N.D. Ind. Dec. 15, 2020) ("Plaintiffs' allegations are merely speculative, which is insufficient on its own to constitute good cause as needed for expedited discovery.").

Defendant's forthcoming well-founded motion to dismiss will likely dispose of this case in its entirety. There is no competition at issue and there are no trade secrets at risk. Mr. Heeger's blockchain project and Jump's validation software services have entirely different markets and functional objectives that do not overlap. (Complaint ¶¶ 22, 25, 63.) Jump does *not* own *any* type of blockchain network in *any* stage of development. (Complaint ¶¶ 19, 22.) Jump openly admits that this action seeks to protect Solana Foundation's blockchain from competition. (Complaint ¶ 22.) This is not a legitimate business interest pursuant to which Jump can seek to enjoin Mr. Heeger.

There is no plausible allegation supporting a claim that Mr. Heeger is using information or property belonging to Jump in his blockchain. Regardless, Firedancer is open source and freely available for public use. (*Supra* note 8.) Based on the lack of competition and the absence of any allegations of exfiltration or trade secrets being at risk, there is no legitimate basis for this Court to intervene with equitable remedies pending resolution in arbitration. Therefore, Jump's request for expedited discovery in aid of that should be denied. *OrthoPediatrics*, 2020 WL 9671301, at *3 ("Without more, irreparable harm at the heart of any potential preliminary injunction is only speculative.")

**B.**     **Jump Seeks Overbroad and Intrusive Discovery.**

Jump seeks broad and intrusive discovery that is not tailored to the needs of its preliminary injunction motion. *See Restoration Hardware, Inc. v. Haynes Furniture Co.*, No. 16-cv-10665, 2017 WL 3597518, at *3 (N.D. Ill. Mar. 13, 2017) (denying expedited discovery requests to the extent they went "well beyond the scope of the preliminary injunction proceedings"). Jump claims the proposed discovery is limited to "key facts," but the actual scope of its demands is far more expansive. (ECF No. 10.) Among other overbroad and improper requests, Jump seeks confidential documents and information involving Liam's relationships with investors and potential investors that have no bearing on the current matter (including *all* communications with individuals with whom Mr. Heeger has had long-standing relationships). (ECF No. 10, Ex. A.) Jump also seeks *all* documents and communications relating to *any* activities Mr. Heeger engaged in "that relate to any blockchain." (ECF No. 10, Ex. B.) These demands are overbroad, vague, intrusive, and go well beyond the scope of any reasonable equitable relief tied to any harm to a legitimate business interest of Jump.

Jump's overbroad requests further evidence its flawed belief that the entire crypto industry is off limits to Mr. Heeger based on its agreement with him. Indeed, the cryptocurrency industry is famously founded on an ethos of open access and a lack of private ownership of its underlying code. (*Supra* note 8). Jump develops bespoke tools to facilitate particular functions within blockchain networks. (*Supra* at 3.) During his employment with Jump, Mr. Heeger worked on Firedancer where he built a validator tool for Solana Foundation. (Complaint ¶¶ 24-25.) Jump's claim that Mr. Heeger should be prohibited from working in the entire crypto industry is a blatant overreach, and its attempt to extract broad discovery aligned with this scope should not be countenanced. (*Id.* ¶¶ 37, 40-41.) There is no prejudice to Jump through denial of this motion. Documents or information relevant to actual matters in dispute would be available as part of discovery in the ordinary course in the arbitration proceeding. (*Id.* ¶¶ 8-9.)

**C.**     **Jump Has Not Demonstrated Any Urgent Need for Discovery.**

Jump does not seek expedited discovery to uncover the extent of a truly exigent threat to

its business. Instead, Jump's objective is to pursue broad information, regardless of its relevance, to substantiate its baseless motion for injunctive relief and to flesh out its legally deficient claims. This is not a reasonable basis to seek expedited discovery and Jump's request should be denied.

Jump has not demonstrated any urgent reason for discovery because there is no actual risk of imminent, irreparable harm. *See WCG Clinical, Inc. v. Sitero, LLC*, No. 24-01080, 2025 WL 107662, at *7 (S.D. Ind. Jan. 15, 2025) (finding no "impending threat of irreparable harm" where there was no evidence former employees possessed confidential information of their former employer or that they disclosed confidential information during their employment). Jump claims it requires expedited discovery to determine the *extent* to which Jump's confidential information was used to develop Mr. Heeger's new blockchain. (ECF No. 10). But, Jump cannot seek discovery about the extent of Mr. Heeger's use without first identifying support for the prerequisite conclusion that Mr. Heeger used Jump's property or information. *See, e.g.*, *OrthoPediatrics*, 2020 WL 9671301, at *2. No such support is provided in the Complaint, motion for expedited discovery, or in the motion seeking a preliminary injunction. Indeed, none exists.

There are no allegations that Mr. Heeger exfiltrated any of Jump's documents or files, let alone its confidential information. Mr. Heeger is not alleged to be engaged in work that will require him to use any of Jump's intellectual property or confidential information. (Complaint ¶ 5; *supra* note 8.) He is not going to sell or market a product or service that Jump develops or offers. (Complaint ¶ 22.) Mr. Heeger's blockchain (concerning which there is no allegation or claim that it will be in the market at any point in the near future) is not alleged to share any features with the validator client he worked on at Jump. (*Id.* ¶¶ 5, 22-25.). As Jump's accusations about Mr. Heeger are entirely unsupported and speculative, the expedited discovery motion appears to be intended to *find* support for seeking injunctive relief rather than to *put* injunctive relief in place pending arbitration. This is not an appropriate use of this Court's judicial resources and goes well beyond preserving the status quo.

The cases cited by Jump do not compel a different outcome. In all the cases cited by Jump addressing comparable situations, evidence of exfiltration or wrongdoing was presented to the

Court prior to the awarding of expedited discovery. *See, e.g.*, *Campaignzero, Inc. v. Staywoke Inc.*, No. 20-cv-06765, 2020 WL 7123066, at *2 (N.D. Ill. Dec. 4, 2020) (evidence of potential confusion between plaintiff and defendant's trademarks presented); *CGB Diversified Servs., Inc. v. Morrison*, No. 20-cv-3043, 2020 WL 4547885, at *3-4 (C.D. Ill. Apr. 2, 2020) (credible text message evidence from sister case showed that defendant was potentially destroying or hiding evidence of exfiltration and was engaged in ongoing attempts to recruit employees from his former employer and solicit former employer's customers); *Shutterfly, Inc. v. ForeverArts, Inc.*, No. 12-cr-3671, 2012 WL 2911887, at *1-2 (N.D. Cal. July 13, 2012) (source log evidence showed that "two days prior to leaving the organization, [defendant] accessed and downloaded [plaintiff's] back end code" which he allegedly used to create a near-identical infringing website).

Here, Jump has presented nothing but speculation, and, thus, Jump lacks a proper purpose for seeking expedited discovery. *See Prudential*, 2024 WL 3802757, at *4 (denying request for expedited discovery where defendants stated they returned all confidential information to their former employer and "plaintiffs fail[ed] to produce evidence showing some likelihood of success on the merits").

### D.  Defendant Will Be Unduly Burdened By Discovery In This Forum.

Jump has initiated an arbitration proceeding with the American Arbitration Association ("AAA"), which will be adjudicating the same claims that have been presented to this Court. (Complaint ¶¶ 8-9; Arbitration Agreement.) The parties contractually agreed that AAA would be the forum designated to resolve disputes regarding Mr. Heeger's employment with Jump. (*Id.*) This Court is only intended to provide temporary equitable remedies in the event there is plausible basis to believe imminent irreparable harm will occur without it. (*Id.*)

Engaging in expedited discovery in this Court while this matter is proceeding before the AAA would be duplicative, inefficient, and unduly burdensome. *Merrill Lynch*, 194 F.R.D. at 623 ("[E]xpedited discovery is all the more inappropriate on this record, because it appears [defendant] is attempting the proverbial 'end-run' around the arbitration process to which it is contractually bound."). Saddling Mr. Heeger with expensive—and potentially entirely unnecessary—discovery

at this early stage would be highly burdensome and prejudicial to Mr. Heeger. Jump has failed to present facts in its Complaint sufficient to show why it believes imminent irreparable harm will occur without action by the Court. This failure is fatal to its motions and the Complaint.

Jump will have the full opportunity to conduct discovery in accordance with AAA's rules and procedures in the arbitration proceeding. Those rules and procedures are designed to simplify and streamline the discovery process and align with what was agreed upon by the parties in Jump's Confidential and/or Proprietary Information Agreement. (Complaint ¶¶ 8-9; Arbitration Agreement.) To that end, arbitration is designed to commence discovery "[a]s promptly as practicable after the selection of the arbitrator(s)." *Employment Arbitration Rules and Mediation Procedures*, American Arbitration Association, at 13 (Nov. 1, 2009). Given that Jump has already initiated the arbitration proceeding and discovery should be beginning in that forum shortly, Jump should not be able to seek discovery in this Court as well. *See OrthoPediatrics*, 2020 WL 9671301, at *3 (denying expedited discovery where the responsive pleading deadline was imminent).

## **<u>CONCLUSION</u>**

For the foregoing reasons, Jump's motion for expedited discovery should be denied.

Dated: January 31, 2025

Respectfully submitted,

COOLEY LLP

*/s/ Miriam Petrillo*

Miriam Petrillo
Cooley LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606-1511
Telephone: (312) 881-6500
Facsimile: (312) 881-6598
mpetrillo@cooley.com@cooley.com

Gerard O'Shea (*pro hac vice forthcoming*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
goshea@cooley.com

Joseph D. Lockinger (*pro hac vice*)
1299 Pennsylvania Avenue, N.W.
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
jlockinger@cooley.com

*Attorneys for Defendant Liam Heeger*